# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
No. 16-271V
Filed: February 6, 2017
Not for Publication

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| SUSAN PLESS, | * |
| | * |
| Petitioner, | * |
| | * |
| v. | * |
| | * |
| SECRETARY OF HEALTH | * |
| AND HUMAN SERVICES, | * |
| | * |
| Respondent. | * |
| | * |

Tetanus-diphtheria-acellular pertussis
("Tdap") vaccine; paresthesias, GBS,
somatoform disorder; no expert;
motion for decision dismissing petition

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Michael G. McLaren, Memphis, TN, for petitioner.
Amy P. Kokot, Washington, DC, for respondent.

**MILLMAN, Special Master**

### DECISION[1]

On February 26, 2016, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10-34 (2012), alleging that at some indeterminate time[2] after

---

[1] Because this unpublished decision contains a reasoned explanation for the special master's action in this case, the special master intends to post this unpublished decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioner has 14 days to identify and move to redact such information prior to the document's enclosure. If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

[2] In her affidavit, petitioner alleges she had tingling in her lower extremities, muscle aches, and joint pain on June 22, 2014. Ex. 1, at 2. In her VAERS report, petitioner, after mistaking the date of her vaccination as March 30, 2014, gives an onset date of June 13, 2011 for pain behind her right eye, paresthesias in her face followed a few days later by pain in her toe and tingling and numbness extending up her leg, spine, and back of her head, giving her blurred vision, difficulty turning her eye, weakness in both legs and arms, burning pain in her legs and spine, slurred speech, and difficulty chewing. Ex. 29, at 1.

receiving tetanus-diphtheria-acellular pertussis ("Tdap") on May 30, 2014, she had chronic paresthesias,[3] weakness, Guillain-Barré syndrome ("GBS"),[4] somatoform disorder,[5] and neuropathy.  Pet. Preamble.

The Federal Circuit in <u>Capizzano v. Secretary of Health and Human Services</u> emphasized that the special masters are to evaluate seriously the opinions of petitioner's treating doctors since "treating physicians are likely to be in the best position to determine whether a logical sequence of cause and effect show[s] that the vaccination was the reason for the injury."  440 F.3d 1317, 1326 (Fed. Cir. 2006); <u>see also</u> <u>Broekelschen v. Sec'y of HHS</u>, 618 F.3d 1339, 1347 (Fed. Cir. 2010); <u>Andreu v. Sec'y of HHS</u>, 569 F.3d 1367, 1375 (Fed. Cir. 2009).  No doctors in this case attribute any of petitioner's multiple complaints of GBS or any neurological or immunological disease within two months of her May 30, 2014 Tdap vaccination.

The undersigned ruled in <u>Corder v. Sec'y of HHS</u>, No. 08-228V, 2011 WL 2469736 (Fed. Cl. Spec. Mstr. May 31, 2011), that flu vaccine cannot cause GBS after two months following vaccination.  In <u>Corder</u>, the onset interval was four months.  In the instant action, the medical records during the period from May 30, 2014 (vaccination) to July 30, 2014 show repeated examinations of petitioner resulted in a normal neurologic diagnosis.  One cannot have GBS with normal reflexes, normal strength, normal CSF protein count, and normal nerve conduction and EMG studies.

On September 26, 2016, the undersigned issued an Order to Show Cause why this case

---

[3] Paresthesia is "an abnormal touch sensation. . . ."  <u>Dorland's Illustrated Medical Dictionary</u> 1383 (32d ed. 2012) (hereinafter, "Dorland's").

[4] GBS "begins with paresthesias of the feet, followed by flaccid paralysis of the entire lower limbs, ascending to the trunk, upper limbs, and face; other characteristics include slight fever, bulbar palsy, absent or lessened tendon reflexes, and increased protein in the cerebrospinal fluid without a corresponding increase in cells."  <u>Dorland's</u> at 1832.

[5] Somatoform disorder denotes "physical symptoms that cannot be attributed to organic disease and appear to be of psychic origin."  <u>Dorland's</u> at 1734.  Petitioner was receiving psychotherapy for generalized anxiety disorder before her vaccination.  Med. recs. Ex. 28, at 23-63 (dating from May 24, 2011 to March 4, 2014).  For instance, on May 29, 2012, petitioner told her therapist that her anxiety had been significantly worse and she had been waking with extreme anxiety and panic attacks in the middle of the night.  <u>Id.</u> at 50.  She said that she woke up and was shaky all day and wanted to shut down for the entire afternoon.  <u>Id.</u>  The therapist focused on the importance of petitioner not focusing on all the negatives.  <u>Id.</u>  Petitioner's first psychotherapy visit after her May 30, 2014 Tdap vaccination was April 1, 2014 and concerned family stresses.  <u>Id.</u> at 22.  Her second psychotherapy visit after her May 30, 2014 Tdap vaccination was June 3, 2014 and also concerned family stresses.  <u>Id.</u> at 21.  Her third psychotherapy visit after her May 30, 2014 Tdap vaccination was June 17, 2014 and concerned family and work stresses.  <u>Id.</u> at 20.  Only at her fourth psychotherapy visit on July 29, 2013, two months after her May 30, 2014 Tdap vaccination,  did she tell her psychotherapist about her dog biting her on the nose and face, and her having pressure in her eyes, numbness and weakness in her legs and in her muscles in her legs and arm.  <u>Id.</u> at 18.  She said she had experienced severe migraine headaches and vision difficulties consisting of blurring.  <u>Id.</u>  Petitioner said she had seen numerous doctors and felt very overwhelmed and frustrated because they dismissed her symptoms as being the result of anxiety.  <u>Id.</u>

should not be dismissed.

On October 6, 2016, the undersigned held a telephonic status conference with counsel, during which petitioner's counsel said he had retained Dr. Michael Hilton to review the case. The undersigned issued an Order setting a deadline of December 5, 2016 for petitioner to file an expert report.

On December 5, 2016, petitioner moved for an extension of time of 60 days to file an expert report which the undersigned granted, setting a new deadline of February 3, 2017.

On February 3, 2017, petitioner filed a Motion for a Decision Dismissing the Petition. Petitioner states in her motion that she "has been unable to secure sufficient and/or persuasive evidence to prove entitlement to compensation in the Vaccine Program." Mot. at ¶ 1. She also states that "to proceed further would be unreasonable and would waste the resources of the Court, Respondent, Petitioner, and the Vaccine Program." Id. at ¶ 2.

The undersigned **GRANTS** petitioner's motion and **DISMISSES** this case.

## FACTS

### Medical Records

On May 30, 2014, petitioner saw nurse practitioner Geovanna O. Deese for a burn/laceration on the back of her right and left legs from a dog leash. Med. recs. Ex. 2, at 3. NP Deese diagnosed her with cellulitis and the need for a Tdap vaccination. Id. Petitioner's problem list was allergic rhinitis, anxiety state, enthesopathy[6] of ankle and tarsus, pain in the joint involving ankle and foot, panic disorder, pneumonia, varicose veins of her lower extremities with inflammation. Id. at 4. Petitioner received Tdap. Id. at 12.

On June 12, 2014, petitioner went to the Minute Clinic where she saw NP Lindsey Walker, complaining of an abrasion. Med. recs. Ex. 3, at 1. Petitioner's dog had bitten her face. Id. NP Walker prescribed azithromycin. Id. at 3.

On June 15, 2014, petitioner went to Cabarrus Urgent Care for pain and swelling on the bridge of her nose and under both eyes from the dog bite. Med. recs. Ex. 7, at 1. PA Elmer F. Stamper, Jr. noted petitioner denied any other complaints. Id. After examining petitioner, PA Stamper diagnosed her with sinusitis and prescribed Bactrim DS and continue with Augmentin. Id. at 6.

On June 16, 2014, petitioner went to Dr. David K. Harper, an ophthalmologist, complaining of pain around her eye after a dog bite. Med. recs. Ex. 4, at 7. Dr. Harper found no ocular problems. Id.

---

[6] Enthesopathy is a "disorder of the muscular or tendinous attachment to bone." Dorland's at 627.

On June 19, 2014, petitioner saw Dr. Nicholas G. Stowell, an ear, nose, and throat specialist, complaining of facial pressure behind her nose and eyes that began with her dog bite injury.  Med. recs. Ex. 5, at 1-3.  He found no signs of infection or other concern.  Id. at 3.

On June 23, 2014, petitioner saw Dr. Thomas N. Howard, complaining of toe pain and tingling in her leg.  Med. recs. Ex. 6, at 3-4.  Neurologically, petitioner had normal gait and station, normal sensation, and normal deep tendon reflexes.  Id. at 5.

On June 27, 2014, petitioner went to Carolinas HealthCare System and saw Dr. Michael R. Reid.  Med. recs. Ex. 17, at 89.  On physical examination, her sensation, motor function, deep tendon reflexes, and strength in her legs and all muscle groups were normal.  Id. at 97.  Dr. Reid diagnosed petitioner with generalized anxiety disorder, which he suspected was strongly contributing to her complaints, but petitioner disagreed and thought her symptoms caused her anxiety.  Id.  Petitioner's history did not suggest GBS.  Id.

On June 28, 2014, petitioner went to the emergency department at Carolinas HealthCare System where Dr. Keith A. Pochick saw her.  Med. recs. Ex. 8, at 30.  Petitioner complained of increasing numbness and tingling in her right leg, starting in the foot and ascending, which now involved the left leg and her right arm.  Id.  On physical examination, petitioner had no focal neurologic deficit.  Id. at 32.  She was normal motorically.  Her tendon reflexes were 2-3+ and symmetric.  Dr. Pochick felt that GBS was very unlikely considering petitioner's brisk reflexes.  Id.  On June 30, 2014, Dr. Francois J. Picot performed an EMG the results of which were normal.  Id. at 62.  Petitioner did not have evidence of peripheral neuropathy or a myopathic process.  Id.  MRI of the brain, cervical spine and lumbar spine did not show any demyelination.  Id. at 63.

On July 3, 2014, petitioner saw Dr. John F. Babich, a rheumatologist.  Med. recs. Ex. 9, at 10.  Dr. Babich's physical examination was unremarkable, finding normal reflexes and no other problems.  Id. at 7-8.

On July 18, 2014, petitioner had a lumbar puncture.  Med. recs. Ex. 8, at 410.  Her cerebrospinal fluid ("CSF") had a normal protein at 29.  Id. at 426; Ex. 13, at 829.

On July 20, 2014, petitioner went to Duke emergency room, complaining of back pain, numbness in her legs, weakness in her arms, and changes in her speech since having a lumbar puncture done the day before.  Med. recs. Ex. 12, at 2.  She had been worked up since mid-June for things associated with this.  Id.  Dr. Reid performed the physical examination. She had normal strength, normal reflexes, and no focal deficits.  Id. at 7.  Her speech was noted to be slurred, but the slurring improved when she was distracted.  Id.  Petitioner was diagnosed with high suspicion for psychosomatic disorder.  Id. at 8.

On July 20, 2014, petitioner saw Dr. Russ Adam Bodner, a neurologist.  Med. recs. Ex. 11, at 17.  Petitioner had multiple complaints whose onset she said was late May.  She said an extendable leash burned the back of her right knee when her dog pulled it.  She noted redness

and tingling at the site which extended up and down from the area of burn.  She went to Urgent Care on May 30, 2014 and the personnel there thought she might have cellulitis and gave her Bactrim which made her face flush and gave her a panicked feeling and "just feeling bad all over."  Id.  She received a tetanus vaccination.  On June 12, 2014, her dog bit her face on her left anterior cheek and right medial nose.  She went to a clinic at CVS which gave her Augmentin and an antibiotic cream.  She said on June 15, 2014 that she had a swelling behind her nose and the cheeks inside her head as well as a swelling behind her right eye.  She went to Urgent Care which put her back on Bactrim together with Augmentin.  On June 16, 2014, she saw the ophthalmologist Dr. Harper because of sharp pain behind her right eye and a feeling of her face swelling although she did not have any swelling and her eye examination was normal.  She described more pressure in her face and feeling as though her nose were scuffed.  She had a panicky feeling and facial flushing.  She went to Dr. Langford on June 19, 2014 convinced that she had a sinus infection.  Dr. Langford told petitioner that her sinuses were not infected.  On June 20, 2014, petitioner noticed discomfort of her right little toe as if it were burning and tingling and she had deep pain without tenderness, discoloration, or swelling.  Over a couple of days, she said it extended to her ankle and then the tingling started going up her shin on the front and to the distal right anterior thigh.  On June 22, 2014, she was on vacation at Pawleys Island and went to a local Urgent Care where the doctor saw nothing indicative of infection, but drew labs for a possible autoimmune disorder.  Petitioner said that her right leg started to fall asleep intermittently on June 23, 2014 and she noticed weakness of her thighs, the right greater than the left.  She noted fasciculations in her legs at night.  She said her thighs were so weak she could not run.  Id.

She stepped in a small hole on the beach which made her knee buckle because she thought it was weak.  Id. at 18.  The right small toe pain increased and her thigh weakness worsened.  She also started noticing discomfort in her lower back and her right arm would fall asleep also.  She continued to feel as if her face were swollen.  Around June 27, 2014, she noticed her vision was blurry and that she had monocular diplopia on the right.  The labs at the beach showed a positive ANA.  She was admitted to the hospital on June 28, 2014, and had a brain CT which was normal.  She also had MRIs of her brain and cervical and lumbar spines.  She had an EMG.  She saw Dr. Babich, a rheumatologist, and did not particularly care for him.  She tried to go to work on July 2, 2014, but could work only to 4:00 p.m. because of extreme fatigue.  She felt her right hand was weak and it was hard for her to type.  She felt tightening around her waist.  Id.  Over time, her thought processing was more difficult and she felt confused.  Id. at 19.

On physical examination, petitioner had normal strength, no atrophy, no fasciculations, and normal tone.  Her sensation was normal.  Her reflexes were 2 at the brachioradialis, biceps, triceps, knees, and Achilles.  Id. at 20.  Dr. Bodner reviewed her lab results and MRI tests.  Id. at 22.  He found her neurologic exam unremarkable.  He explained to petitioner and her sister who accompanied her that he could not arrive at a unifying diagnosis.  Petitioner was convinced she had an autoimmune disease.  He said that he cannot think of a disorder that explain her multitude of complaints.  Her symptoms varied and changed over time and were unusual, with symptoms varying between the right side and the left side when not on both sides.  He said he was very

suspicious of an element of a somatization disorder.  He told her that anxiety can play tricks on our minds in causing neurologic symptoms, but petitioner did not accept this answer.  He strongly encouraged her to follow up more closely with her psychotherapist.  Id.

On July 31, 2014, petitioner went to Dr. Donald H. Stewart, III, complaining of double vision and her eyes shaking.  Med. recs. Ex. 5, at 4.  He found nothing wrong with her eyes except she had myopia (nearsightedness).  Id. at 6.

On August 17, 2014, Dr. Bodner gave petitioner an EMG and nerve conduction study.  Med. recs. Ex. 11, at 15.  Electrodiagnostic study of her right leg and left arm were normal.  There was no electrical evidence that petitioner had a peripheral neuropathy.  Id.

On August 28, 2014, Dr. Bodner saw petitioner again.  Id. at 8.  Petitioner reported her symptoms improved quite significantly.  Id.  She told him that she had come to the realization that her mind did escalate her symptoms in the form of a panic attack and that anxiety did get the best of her.  Id. at 9.

On October 27, 2014, Dr. Bodner saw petitioner again.  Id. at 4.  Petitioner told him she saw Dr. Whithers, a rheumatologist, who told her she did not have any rheumatologic disease.  Id.

On March 6, 2015, Dr. Bodner saw petitioner again.  Id. at 1.  She complained of muscle twitching which she said increased when she took Z-Pak for a sinus infection in January.  She also complained of twitching that was inside her, numbness in her feet, legs, and hands, and discomfort in the outer part of her left ear.  She said she has to concentrate on her walking and her legs were walk.  She had discomfort in her low back and a pulsation in the back of her head and face.  She said she had trouble turning her eyes from side to side, and had blurry vision.  When she tried to roll over in bed, she felt pain throughout her body and her entire body quivered.  Prior to this, she had gone back to running and had run a 5K race.  Id.  Dr. Bodner found petitioner's neurologic examination unremarkable and once again suspected she may have a functional somatic disorder.  Id. at 3.  He wrote that petitioner's history is not typical for ischemic disease, demyelinating disease, a peripheral process such as AIDP (acute inflammatory demyelinating polyneuropathy such as GBS) or CIDP (chronic inflammatory demyelinating polyneuropathy), or for small fiber neuropathy.  Id.

On November 10, 2016, Dr. Robbie Buechler examined petitioner and found she had normal 2+ deep tendon reflexes.  Med. recs. Ex. 32, at 4.

On December 13, 2016, petitioner's EMG/NCS result was normal.  Id. at 5-8.  Dr. Buechler wrote that petitioner did not have CIDP.  Id. at 7.

## DISCUSSION

To satisfy her burden of proving causation in fact, petitioner must prove by preponderant

evidence: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." <u>Althen v. Sec'y of HHS</u>, 418 F.3d 1274, 1278 (Fed. Cir. 2005). In <u>Althen</u>, the Federal Circuit quoted its opinion in <u>Grant v. Secretary of Health and Human Services</u>, 956 F.2d 1144, 1148 (Fed. Cir. 1992):

> A persuasive medical theory is demonstrated by "proof of a logical sequence of cause of and effect showing that the vaccination was the reason for the injury [,]" the logical sequence being supported by a "reputable medical or scientific explanation[,]" <u>i.e.</u>, "evidence in the form of scientific studies or expert medical testimony[.]"

418 F.3d at 1278.

Without more, "evidence showing an absence of other causes does not meet petitioner's affirmative duty to show actual or legal causation." <u>Grant</u>, 956 F.2d at 1149. Mere temporal association is not sufficient to prove causation in fact. <u>Id.</u> at 1148.

Petitioner must show not only that but for her Tdap vaccination, she would not have whatever physical condition she has, but also that her Tdap vaccination was a substantial factor in causing whatever physical condition she has. <u>Shyface v. Sec'y of HHS</u>, 165 F.3d 1344, 1352 (Fed. Cir. 1999).

The medical records do not show that petitioner reacted to her Tdap vaccination within two months of vaccination. The Vaccine Act, § 300aa-13(a)(1), prohibits the undersigned from ruling for petitioner based solely on her allegations unsubstantiated by medical records or medical opinion. None of petitioner's medical records within two months of her Tdap vaccination or even afterward supports her allegations. Instead, they attribute her multiple complaints to somatization since her physical examinations and testing prove that she is neurologically normal. The undersigned will not award damages to petitioner for believing she is physically ill when medical testing and examination show that she is not. Petitioner has not filed a medical expert report in support of her allegations.

On February 3, 2017, petitioner filed a Motion for a Decision Dismissing the Petition. The undersigned **GRANTS** petitioner's Motion for a Decision Dismissing the Petition and **DISMISSES** this case.

## CONCLUSION

This petition is **DISMISSED**. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[7]

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly filing a notice renouncing the right to seek review.

**IT IS SO ORDERED.**

Dated: <u>February 6, 2017</u>                                          <u>  /s/ Laura D. Millman</u>
                                                                                            Laura D. Millman
                                                                                            Special Master